UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| HELEN A. LANSDOWNE, | ) | Case No. SACV 04-0912-RC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | OPINION AND ORDER |
| | ) | |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of the Social | ) | |
| Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Helen A. Landsdowne filed a complaint on August 9, 2004, seeking review of the Commissioner's decision denying her application for disability benefits. The Commissioner answered the complaint on January 3, 2005, and the parties filed a joint stipulation on February 28, 2005.

**BACKGROUND**

**I**

On April 19, 2001, plaintiff applied for disability benefits under the Supplemental Security Income ("SSI") program of Title XVI of the Social Security Act ("the Act"), claiming an inability to work

since 1998, due to bipolar disorder.[1]  Certified Administrative Record ("A.R.") 82-94, 101.  The plaintiff's application was denied initially on September 25, 2001, and was denied again on January 25, 2002, following reconsideration.  A.R. 52-61.  The plaintiff then requested an administrative hearing, which was held before Administrative Law Judge Steven L. Chaffin ("the ALJ") on November 6, 2002, July 8, 2003, and April 1, 2004.  A.R. 62, 484-522.  On April 13, 2004, the ALJ issued a decision finding plaintiff is not disabled.  A.R. 12-22.  The plaintiff appealed this decision to the Appeals Council, which denied review on July 21, 2004.  A.R. 4-7.

**II**

The plaintiff, who was born on November 14, 1961, is currently 44 years old.  A.R. 82, 444, 487.  She has a high school education, and has previously worked as telemarketer and file clerk.  A.R. 107, 110-17, 468, 473, 476-83.

The plaintiff has a long history of substance abuse (including amphetamines, methamphetamine, cocaine, and marijuana) and alcohol abuse, and since June 27, 1994, has received mental health treatment at the Orange County Health Care Agency ("Orange County"), where she has been prescribed various antidepressants and other medications.  A.R. 248-373, 396-437.  After an initial, unsuccessful attempt to treat her drug addiction in 1994, A.R. 337-54, plaintiff did not have any further treatment until 1998.  A.R. 336.  On July 31, 1998, Dr.

---

[1] The plaintiff previously applied for disability benefits on February 7, 2000; however, this application was denied on July 6, 2000.  A.R. 444-61, 467.

2

Johnson examined plaintiff and diagnosed her with major depression and amphetamine dependence, and determined her Global Assessment of Functioning ("GAF") to be 30.[2]  A.R. 329-30.  However, by September 24, 1998, plaintiff's GAF had increased to 60.[3]  A.R. 321.

While incarcerated in 2000 and 2001, various clinical psychologists and physicians examined plaintiff and diagnosed her with a mixed bipolar disorder, A.R. 235-38, and that diagnosis was subsequently augmented to add borderline personality disorder, A.R. 218-19, an antisocial personality disorder, and passive/aggressive traits.  A.R. 207, 211-12, 225-29, 230-34.

On September 15, 2001, Reynaldo Abejuela, M.D., a psychiatrist, examined plaintiff and diagnosed her with mixed type bipolar disorder and antisocial personality disorder.  A.R. 239-45.  Dr. Abejuela found plaintiff had "mild" evidence of depression, mood swings, irritability, and anger, but her reasoning and comprehension were intact and there was no evidence of a severe impairment in thought

---

[2] A GAF of 30 means that the plaintiff's "[b]ehavior is considerably influenced by delusions or hallucinations or serious impairment in communication or judgment (e.g., sometimes incoherent, acts grossly inappropriately, suicidal preoccupation) or inability to function in almost all areas (e.g., stays in bed all day; no job, home, or friends)."  American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 34 (4th ed. (Text Revision) 2000).

[3] A GAF of 60 indicates "[m]oderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) or moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."  Diagnostic and Statistical Manual of Mental Disorders at 34.

3

processes or communication, and Dr. Abejuela opined plaintiff's occupational and social functioning were not severely impaired so long as she abstains from methamphetamine and alcohol.  A.R. 244.  Dr. Abejuela further opined plaintiff has no severe restriction in daily activities, social functioning or concentration, persistence or pace, no repeated emotional deteriorations in work-like situations, and no severe limitations due to an emotional impairment; plaintiff is not severely impaired in her ability to understand, remember, and carry out instructions, respond to co-workers, supervisors, or the public, or respond appropriately to work situations or changes in a routine work setting; and plaintiff is able to follow simple and complex job instructions so long as she abstains from drugs and alcohol.  Id.

On August 23, 2002, Marc Charles, M.D., found plaintiff has severe mood swings and is: "markedly" limited in her ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, complete a normal workday and workweek without interruptions from psychologically-based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; "moderately" limited in her ability to carry out detailed instructions, to perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances, sustain an ordinary routine without special supervision, work in coordination within a proximity to others without being distracted by them, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers and peers without distracting them or exhibiting behavioral extremes, maintain socially appropriate behavior and adhere to basic standards of neatness and

4

1  cleanliness, respond appropriately to changes in the work setting, be
2  aware of normal hazards and take appropriate precautions, and set
3  realistic goals or make plans independently of others; and "slightly"
4  limited in her ability to remember locations and work-like procedures,
5  understand, remember, and carry out very short and simple instruc-
6  tions, make simple work-related decisions, interact appropriately with
7  the general public, ask simple questions or request assistance, and
8  travel in unfamiliar places or use public transportation.  A.R. 375-
9  78.  Finally, Dr. Charles opined that although plaintiff is addicted
10 to methamphetamine, she can control her drug use.  A.R. 378.

12      On April 1, 2003, Charlene K. Krieg, Ph.D., a clinical
13 psychologist, examined plaintiff, conducted psychological testing, and
14 diagnosed plaintiff with amphetamine dependence, cannabis abuse and
15 depressive disorder (not otherwise specified), bipolar disorder (not
16 otherwise specified), and obsessive-compulsive disorder (not otherwise
17 specified); however, Dr. Krieg concluded plaintiff does not evidence
18 any disorder on mental status examination.  A.R. 379-87.  Dr. Krieg
19 opined:

21      [plaintiff] is capable of understanding clear instructions,
22      following simple directions, and completing tasks.  She was
23      able to sustain performance on detailed and complex tasks.
24      She appears able to accept instructions from supervisors and
25      interact with coworkers and the public.  She appears able to
26      maintain a regular attendance in the workplace.  She does
27      not appear to need special or additional supervision on work
28      activities.  [¶]  If she is compliant with her

5

1    treatment/medication and is not abusing substances, there is
2    no impairment that would interfere with her ability to
3    complete a normal workday or workweek.  She appears able to
4    deal with the usual stress that may be encountered in
5    competitive work and adjust to changes.  She would not
6    create a hazard in the workplace if she is not using
7    substances.

9 A.R. 384-85.  On August 26, 2003, Dr. Krieg reexamined plaintiff,
10 again conducted psychological testing, and repeated her previous
11 diagnoses.  A.R. 388-95.  Further, Dr. Krieg found plaintiff's
12 Minnesota Multiphasic Personality Inventory ("MMPI") test results were
13 invalid due to plaintiff's exaggeration of symptoms and possible
14 conscious or unconscious effort to feign impairment.  A.R. 392.
15 Finally, Dr. Krieg reiterated that:

17    [plaintiff] is capable of understanding clear instructions,
18    following simple directions, and completing tasks.  She
19    appears able to accept instructions from supervisors and
20    interact with coworkers and the public.  She appears able to
21    maintain a regular attendance in the workplace.  She does
22    not appear to need special or additional supervision on work
23    activities.  [¶]  If she is compliant with her
24    treatment/medication for a Bi-Polar Disorder and is not
25    using/abusing substances, there is no impairment that would
26    interfere with her ability to complete a normal workday or
27    workweek.  She would be able to deal with the usual stress
28    that may be encountered in competitive work and adjust to

1 changes. She would not create a hazard in the workplace.

3 A.R. 393.

5 Medical expert Glenn A. Griffin, Ph.D., a psychologist, testified at the administrative hearing that plaintiff has a long history of substance abuse, in uncertain remission; but the record does not adequately establish the existence of a bipolar or mood disorder independent of plaintiff's substance abuse since continued methamphetamine use produces symptoms consistent with mania and the treating records do not support the limitations. A.R. 516-22.

13 Dr. Griffin agreed with Dr. Krieg that plaintiff has no impairment interfering with her ability to perform work-related activities, and criticized Dr. Charles's assessment of plaintiff's limitations on the grounds that the basis of Dr. Charles's assessment is unclear, there are no medical records substantiating the significant limitations, and the limitations are belied by the empirical evidence from Dr. Krieg's psychological testing of plaintiff. A.R. 504-05.

**DISCUSSION**

**III**

The Court, pursuant to 42 U.S.C. § 405(g), has the authority to review the Commissioner's decision denying plaintiff disability benefits to determine if her findings are supported by substantial evidence and whether the Commissioner used the proper legal standards in reaching her decision. Meanel v. Apfel, 172 F.3d 1111, 1113 (9th

7

Cir. 1999); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998).

"In determining whether the Commissioner's findings are supported by substantial evidence, [this Court] must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001). "If the evidence can reasonably support either affirming or reversing the [Commissioner's] conclusion, the court may not substitute its judgment for that of the [Commissioner]." Reddick, 157 F.3d at 720-21; McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

The claimant is "disabled" for the purpose of receiving benefits under the Act if she is unable to engage in any substantial gainful activity due to an impairment which has lasted, or is expected to last, for a continuous period of at least twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). "The claimant bears the burden of establishing a prima facie case of disability." Roberts v. Shalala, 66 F.3d 179, 182 (9th Cir. 1995), cert. denied, 517 U.S. 1122 (1996); Smolen v. Chater, 80 F.3d 1273, 1289 (9th Cir. 1996).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process to be followed by the ALJ in a disability case. 20 C.F.R. § 416.920. In the **First Step**, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. 20 C.F.R. § 416.920(b). If not, in the **Second Step**, the ALJ must determine whether the claimant has a severe

impairment or combination of impairments significantly limiting her from performing basic work activities.  20 C.F.R. § 416.920(c).  If so, in the **Third Step**, the ALJ must determine whether the claimant has an impairment or combination of impairments that meets or equals the requirements of the Listing of Impairments ("Listing"), 20 C.F.R. § 404, Subpart P, App. 1.  20 C.F.R. § 416.920(d).  If not, in the **Fourth Step**, the ALJ must determine whether the claimant has sufficient residual functional capacity despite the impairment or various limitations to perform her past work.  20 C.F.R. § 416.920(f).  If not, in **Step Five**, the burden shifts to the Commissioner to show the claimant can perform other work that exists in significant numbers in the national economy.  20 C.F.R. § 416.920(g).  Where there is evidence of a mental impairment that may prevent a claimant from working, the Commissioner has supplemented the five-step sequential evaluation process with additional regulations addressing mental impairments.  Maier v. Comm'r of the Soc. Sec. Admin., 154 F.3d 913, 914 (9th Cir. 1998) (per curiam).

Applying the five-step sequential evaluation process, the ALJ found plaintiff has not engaged in substantial gainful activity since the alleged onset of disability.  (Step One).  The ALJ then found plaintiff's "hypothyroidism, obesity, history of high blood pressure, and substance addiction disorder are considered a 'severe' combination of impairments"; however, plaintiff does not have a mental impairment.  (Step Two).  The ALJ also found plaintiff does not have an impairment or combination of impairments that meets or equals a Listing.  (Step Three).  The ALJ next determined plaintiff is able to perform her past relevant work as a telemarketer; therefore, she is not disabled.

9

(Step Four).

### IV

A claimant's residual functional capacity ("RFC") is what she can still do despite her physical, mental, nonexertional, and other limitations. Mayes v. Massanari, 276 F.3d 453, 460 (9th Cir. 2001); Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). Here, the ALJ determined plaintiff retains the following RFC:

> an unrestricted mental functional capacity as long as the [plaintiff] remains compliant with treatment and abstains from substance abuse;[4] with the physical capacity for lifting and carrying up to 25 pounds frequently and 50 pounds occasionally; stand and walk for 4 to 6 hours in an 8 hour workday with normal breaks; and to sit without restriction.

A.R. 21 (footnote added). However, plaintiff contends the ALJ's RFC finding is not supported by substantial evidence because the ALJ improperly rejected the opinion of her treating physician Dr. Charles[5]

---

[4] The plaintiff testified at the administrative hearing that she had not used any nonprescription drugs since she last used crystal methamphetamine approximately two-and-a-half years ago. A.R. 483. At that time, plaintiff was using crystal methamphetamine daily, and was selling drugs to support her habit. A.R. 483-84.

[5] More specifically, plaintiff contends:

> [T]he ALJ totally ignored that Dr. Charles also responded to the question, 'Can the claimant control drinking of alcohol and or use of drugs' by answering

10

1 and erroneously determined plaintiff was not a credible witness.
2 There is no merit to plaintiff's claims.

**A.   Treating Physician's Opinion**:

The ALJ must provide clear and convincing reasons for rejecting the uncontroverted opinion of a treating physician, <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005), "[e]ven if [a] treating doctor's opinion is contradicted by another doctor. . . ." <u>Reddick</u>, 157 F.3d at 725; <u>Connett v. Barnhart</u>, 340 F.3d 871, 874 (9th Cir. 2003).

Here, the ALJ rejected Dr. Charles's assessment of plaintiff's limitations, citing several reasons.  First, the ALJ found that "[a]ny finding of 'moderate' or 'marked' impairment in mental function is inconsistent with other treating reports, and with the consultative mental status examination results. . . ."  A.R. 18-19.  Thus, the ALJ found Dr. Charles's assessment was contrary to the treating records from Orange County and the records from other treating and examining physicians, which showed plaintiff's condition "improved and stabilized during periods in which she stopped using drugs and alcohol

---

'Yes.'  Thus, it is clear that Dr. Charles has indicated that there is a problem with drugs and probably will the rest of her life but presently she is able to control the use of them.  The Plaintiff is in "Sustained remission" with the substance abuse as the ALJ has noted in his opinion.

Joint Stip. at 3:5-15 (citations omitted); <u>see also</u> A.R. 17-18, 378.  Unfortunately, plaintiff does not explain the significance of the foregoing statement by Dr. Charles or how it supports plaintiff's claim of disability.

11

1 and was compliant with treatment." A.R. 18; see also A.R. 198, 239-
2 45, 252, 279.  Second, the ALJ found Dr. Charles's assessment of
3 plaintiff's mental status is "inconsistent with the level of function
4 demonstrated by the [plaintiff] on two consultative psychological
5 examinations." A.R. 19; see also A.R. 379-95.  These are specific and
6 legitimate reasons for rejecting Dr. Charles's assessment of
7 plaintiff's limitations.  See Batson v. Comm'r of the Soc. Sec.
8 Admin., 359 F.3d 1190, 1195 (9th Cir. 2004) (ALJ properly gave minimal
9 weight to treating physicians' opinions, which were in the form of a
10 checklist and were contradicted by other statements and assessments of
11 plaintiff's condition); Morgan v. Comm'r of the Soc. Sec. Admin., 169
12 F.3d 595, 602 (9th Cir. 1999)("Inconsistencies between [treating and
13 examining physicians] conclusions provided the ALJ additional
14 justification for rejecting [treating physician's] opinion.").
15
16      Moreover, the ALJ's assessment of plaintiff's RFC is supported by
17 substantial evidence, including the opinions of Drs. Abejuela and
18 Krieg and the testimony of medical expert Dr. Griffin.  See Tonapetyan
19 v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001) (examining physician's
20 medical report based on independent examination of claimant
21 constitutes substantial evidence to support ALJ's disability
22 determination); Morgan, 169 F.3d at 600 ("Opinions of a nonexamining,
23 testifying medical advisor may serve as substantial evidence when they
24 are supported by other evidence in the record and are consistent with
25 it.").  For these reasons, there is no merit to plaintiff's claim that
26 the ALJ's RFC finding is not supported by substantial evidence.
27 //
28 //

**B.  Credibility:**

At the administrative hearing, plaintiff testified she is unable to work because she is very depressed most of the time, and it is hard for her to get out of bed.  A.R. 491-92.  However, plaintiff also stated she is taking computer classes.  A.R. 488.

Once a claimant has presented objective evidence that she suffers from an impairment that could cause pain or other nonexertional limitations, the ALJ may not discredit the claimant's testimony "solely because the degree of pain alleged by the claimant is not supported by objective medical evidence."  Bunnell v. Sullivan, 947 F.2d 341, 347 (9th Cir. 1991) (en banc); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004).  Thus, if the ALJ finds the claimant's subjective complaints are not credible, he must make specific findings to support that conclusion.  Moisa, 367 F.3d at 885; Bruton v. Massanari, 268 F.3d 824, 828 (9th Cir. 2001).  "Factors that the adjudicator may consider when making such credibility determinations include the claimant's daily activities, inconsistencies in testimony, effectiveness or adverse side effects of any pain medication, and relevant character evidence."  Orteza v. Shalala, 50 F.3d 748, 749-50 (9th Cir. 1995) (per curiam).

Here, the ALJ found plaintiff was not a credible witness for several reasons.  First, the ALJ found plaintiff's "alleged level of incapacity is simply inconsistent with the level of function demonstrated by the [plaintiff] in the reports of record."  A.R. 20.  This is a proper basis for the ALJ to find plaintiff was not a credible witness.  See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir.

1  2005)("Although lack of medical evidence cannot form the sole basis
2  for discounting pain testimony, it is a factor that the ALJ can
3  consider in his credibility analysis."). Second, the ALJ determined
4  plaintiff exaggerated her symptoms on psychological testing. A.R. 20;
5  see also A.R. 392 (invalid MMPI suggesting exaggeration of symptoms
6  and effort to feign impairment). This is a proper basis for the ALJ
7  to find plaintiff was not a credible witness. Tonapetyan, 242 F.3d at
8  1148; Orteza, 50 F.3d at 750. Third, the ALJ noted inconsistencies in
9  the medical record regarding plaintiff's sobriety and use of drugs.
10 A.R. 20. For instance, on September 15, 2001, plaintiff told Dr.
11 Abejuela she had not abused drugs or alcohol for a long time and was
12 "clean and sober[,]" A.R. 240; however, on April 1, 2004, plaintiff
13 testified that she was using crystal methamphetamine daily and selling
14 drugs approximately two-and-a-half years prior to the hearing – i.e.
15 September 2001. A.R. 429-30. Moreover, on August 8, 2002, it was
16 noted plaintiff was still occasionally using drugs despite harmful
17 consequences, A.R. 437; nevertheless, on April 1, 2003, plaintiff told
18 Dr. Krieg she stopped using amphetamines in 2000. A.R. 381. These
19 inconsistencies support the ALJ's negative credibility determination.
20 See Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002)(ALJ properly
21 rejected claimant's testimony based, in part, on a finding claimant
22 "had not 'been a reliable historian, presenting conflicting
23 information about her drug and alcohol usage[.]'"); Verduzco v. Apfel,
24 188 F.3d 1087, 1090 (9th Cir. 1999) (ALJ offered clear and convincing
25 reasons for rejecting claimant's testimony, including that claimant's
26 "testimony and various statements regarding his drinking were not
27 consistent.").
28 //

All of the foregoing reasons stated by the ALJ, when taken together, support the ALJ's determination that plaintiff was not a credible witness.  Thus, the ALJ's negative credibility determination was "clear and convincing, sufficiently specific, and supported by substantial evidence[,]" Celaya v. Halter, 332 F.3d 1177, 1181 (9th Cir. 2003), and there is no merit to plaintiff's claim that the ALJ erred in determining she was not a credible witness.

**ORDER**

IT IS ORDERED that: (1) plaintiff's request for relief is denied, and (2) the Commissioner's decision is affirmed, and Judgment shall be entered in favor of defendant.

DATE:   December 6, 2005              /s/ Rosalyn M. Chapman
                                                     ROSALYN M. CHAPMAN
R&R-MDO\04-0912.MDO              UNITED STATES MAGISTRATE JUDGE
12/6/05

15